05-6026-ag
International Union et al v. NLRB

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------

August Term, 2007

(Argued: December 20, 2007          Decided: March 20, 2008)

Docket No. 05-6026-ag

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO,

          Petitioner,

          - against -

NATIONAL LABOR RELATIONS BOARD,

          Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before:   MINER and RAGGI, Circuit Judges, and
          RAKOFF, District Judge.

     Petitioner International Union, United Automobile,
Aerospace, and Agricultural Implement Workers of America, AFL-CIO
petitions for review of those parts of a decision of the National
Labor Relations Board that found that Stanadyne Automobile
Corporation did not commit unfair labor practices in the period
before a representation election by (1) orally issuing a rule
that purported to prohibit "harassment" of co-workers, (2)
suggesting possible plant closures and other negative
consequences of unionization in speeches directed at employees,

---

*The Honorable Jed S. Rakoff, United States District Judge
for the Southern District of New York, sitting by designation.

-1-

and (3) announcing improved employee pension benefits shortly before the election.  We hold that it was unreasonable for the Board to find that Stanadyne's no-harassment rule did not, in context, have a chilling effect on rights protected by Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, but we hold that in all other respects the Board's decision was reasonable and supported by substantial evidence.  Petition granted in part, denied in part, and remanded.

THOMAS W. MEIKLEJOHN, Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., Hartford, Conn., for Petitioner.

HEATHER S. BEARD (Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Fred B. Jacob, Supervisory Attorney, William M. Bernstein, Senior Attorney,            ), National Labor Relations Board, Washington, D.C., for Respondent.

RAKOFF, District Judge.

Petitioner International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, AFL-CIO ("the Union") petitions for review of those parts of a decision of the National Labor Relations Board ("NLRB" or the "Board") that found that Stanadyne Automobile Corporation ("Stanadyne" or the "Employer") did not commit unfair labor practices in the period immediately preceding a representation election.

Stanadyne is an automobile parts manufacturer.  In January 2000, the Union began an organizing drive among the employees working at Stanadyne's plant in Windsor, Connecticut.  On May 15,

-2-

2000, the Union filed a petition with the NLRB seeking a representation election, and the Board scheduled the election for June 29, 2000.

Before the Union filed the election petition, Stanadyne had no rule prohibiting employees from talking during working hours about any topic they chose. However, after the petition was filed on May 15, 2000, Stanadyne supervisors informed employees that they were not allowed to discuss the Union or solicit Union support during working hours. Some employees were informed that discussing the Union during company time could result in the Employer disciplining or firing them. These actions, as the Board subsequently found, were clear violations of rights protected by Section 7 of the National Labor Relations Act ("NLRA" or the "Act"), 29 U.S.C. ¶ 157. Stanadyne has not appealed that determination.

On June 6, 2000, the President and Chief Executive Officer of Stanadyne, William Gurley, delivered a prepared speech to groups of employees at the Windsor plant, in which he promulgated a rule against "harassment." Specifically, Gurley stated:

> [I]t has come to my attention that some Union supporters, not all, but some, are harassing fellow employees. You can disagree with the Company position; you can be for the Union. You can be for anything you want to, but no one should be harassed. Harassment of any type is not tolerated by this Company and will be dealt with.

On June 21, 2000, or little more than a week before the election, Stanadyne again held meetings to address groups of employees. At each meeting, Gurley and Stanadyne managers Art Caruso and Ron Binkus gave prepared remarks. Gurley stated that the law only required that Stanadyne negotiate with the Union, and continued:

> However, if after negotiating we were not willing to accept the Union's proposals or the Union were not willing to accept the Company's proposals, then the Union only has two options that I know of: (1) It can accept the Company's offer, or (2) It can call you out on strike in order to try to get Stanadyne to agree to its proposals.

Following Gurley's remarks, Caruso discussed potential negative ramifications of a strike, such as loss of pay, loss of health insurance, ineligibility for unemployment compensation, inability to pay bills, and permanent loss of jobs. On the issue of the likelihood of strikes, Caruso said that "research shows they happen often, but to the extent they happen even once, one is too many. Although strikes are not inevitable, everyone knows that where unions exist, strikes occur." Caruso also characterized the Union's local affiliate as "strike happy."

Binkus then spoke, describing his experiences with unions at other plants, including an oral strike vote at a union meeting where he had felt so intimidated that he abandoned his planned "no" vote. Binkus further described "intimidation, sabotage, and

-4-

violence" that regularly occurred in unionized facilities each time a collective-bargaining agreement was about to expire.  He also described a confrontation at a Stanadyne plant where a guard died after being struck in the head during an altercation with pro-union employees.  Binkus concluded his remarks by stating that "violence, threats, intimidation, and a death ... happened at UAW locations" and exhorting the employees to keep themselves out of "a violent environment" by "vot[ing] 'no'."

Finally, Gurley spoke again at the conclusion of the meetings, saying "union members also have means to threaten and coerce fellow members.  Please be careful of the path you take, you may not like where it ends."  Gurley then unveiled an eight-foot by twelve-foot, two-sided poster, each side of which displayed seven photographs of dilapidated buildings and vacant lots.  The top of the poster read: "These are just a few examples of plants where the UAW used to represent employees."  Across each photo was the word "CLOSED" in large red block letters.  Across the bottom of the poster were the question "Is This What the UAW Calls Job Security?" and the phrase "VOTE NO!"  Copies of the poster were displayed throughout the plant during the week before the election.

Sometime between the promulgation of the no-harassment rule on June 6 and the meetings with employees on June 21, Stanadyne

posted a notice in the Windsor plant announcing a change in the formula for pension benefit calculations that would increase the benefit from $19 per month per year of service to $21, effective July 1, 2000. According to Stanadyne, this increase was the result of its regular program for increasing benefits, under which Stanadyne's Compensation and Benefits manager, Richard Lurie, twice yearly reviewed benefits offered by other comparable employers and submitted a recommendation to management based on his review. If Stanadyne then decided to make changes to its employee benefits, it typically did so on the January 1 or July 1 following the recommendation, announcing the changes one to two weeks before the effective date.

On June 29, 2000, the Union lost the election at the Windsor facility. Based on the above facts, an Administrative Law Judge ("ALJ") found that the Employer had violated the NLRA when it prohibited discussing the Union or soliciting support for the Union during working hours. The ALJ further found that Gurley's June 6 no-harassment statement was a threat of reprisal for protected activity in violation of the NLRA, and that the set of speeches given on June 21 (including presentation of the poster) involved threats of plant closure and job loss that also violated the NLRA. Finally, the ALJ found that the announcement of increased pension benefits violated the Act because its purpose

was to dissuade employees from voting for the Union.

The NLRB affirmed the ALJ's finding that Stanadyne violated the NLRA by prohibiting discussions or solicitations regarding unionization during working hours, but otherwise reversed the ALJ's findings. The Union seeks review by this Court of the NLRB's determinations regarding the June 6 promulgation of the purported no-harassment rule, the June 21 speeches, and the mid-June announcement of the increase in pension benefits.

As the outset, we note that our review of the Board's decision is highly deferential. Specifically, we review the NLRB's factual findings to determine "whether they are supported by 'substantial evidence' in light of the record as a whole," Elec. Contractors, Inc. v. NLRB, 245 F.3d 109, 116 (2d Cir. 2001) (quoting 29 U.S.C. § 160(e) & (f)), and we review the Board's legal conclusions "to ensure that they have a 'reasonable basis in law,'" id. (quoting AT&T v. NLRB, 67 F.3d 446, 451 (2d Cir. 1995)). Furthermore, we "'defer to the Board's decision when there appears to be more than one reasonable resolution and the Board has adopted one of these.'" Id. (quoting Sheridan Manor Nursing Home, Inc. v. NLRB, 225 F.3d 248, 252 (2d Cir. 2000)).

In view of this deference, we cannot say that the Board's application of law to fact was unreasonable with respect to either the June 21, 2000, speeches or the mid-June announcement

of the increase in benefits.  An employer is not so cabined by the prohibition against interfering with a union election that it cannot express its views about unionization "so long as the communications do not contain a 'threat of reprisal or force or promise of benefit.'"  NLRB v. Gissel Packing Co., 395 U.S. 575, 618 (1969) (quoting 29 U.S.C. § 158(c)).  The Board found that the June 21 speeches (including the poster) did not constitute threats and that, if predictions were made, they were "carefully phrased on the basis of objective fact to convey [Stanadyne's] belief as to demonstrably probable consequences beyond [its] control."  Id.  While it might not have been unreasonable to find to the contrary (as the ALJ did), we cannot say that the Board's reading of the June 21 speeches was unreasonable.

As to the mid-June announcement of the increase in pension benefits, even though there is a presumption that an increase in benefits or the announcement of such an increase between the filing of a petition for an election and the election itself is motivated by a desire to interfere with "employee freedom of choice," Baltimore Catering Co., 148 N.L.R.B. 970, 973 (1964), in this case the Board determined that Stanadyne had overcome the presumption and did not, in fact, act for the purpose of influencing the election.  Given the company's undisputed prior history of announcing changes in benefits in or around mid-June,

-8-

we cannot say that the Board's factual determination was not supported by substantial evidence or that it was unreasonable.

We cannot agree, however, that the Board acted reasonably in concluding that the purported no-harassment rule was not a violation of the NLRA. An employer may not promulgate a rule which has a chilling effect on the right to organize or join a union. See 29 U.S.C. § 158(a)(1); Dist. Lodge 91, Int'l Ass'n of Machinists v. NLRB, 814 F.2d 876, 879-80 (2d Cir. 1987). Even if a rule does not explicitly restrict protected activity, the Board has determined that the rule will constitute a violation if: "(1) employees would reasonably construe the language to prohibit [protected] activity; (2) the rule was promulgated in response to union activity; or (3) the rule has been applied to restrict the exercise of [protected] rights." Martin Luther Mem'l Home, Inc., 343 N.L.R.B. 646, 647 (2004).

Whether or not Gurley's professed reason for the no-harassment rule -- "it has come to my attention that some Union supporters, not all, but some, are harassing fellow employees" -- is by itself sufficient to demonstrate an NLRA violation, it was certainly unreasonable for the Board to find that "employees would [not] reasonably construe [the no-harassment rule] to prohibit [protected] activity." Id. Here, as elsewhere, context is everything. When Gurley announced the no-harassment rule on

June 6, Stanadyne had already promulgated an illegal rule, conveyed by its supervisors to the employees, that the employees were not allowed to discuss unionization or solicit co-workers on that issue during working hours. Against that background, no reasonable employee could fail to infer that the rule against "harassment," which Gurley did not define and which, for example, can amount to no more than persistent annoyance, see Merriam Webster's Collegiate Dictionary 529 (10th ed. 1997), was intended to discourage protected election activity.

The Board's reliance on Gurley's knowledge of unprotected activity, such as vandalism, graffiti, and a battery, is irrelevant; for what counts, under the first prong of Martin Luther, is the knowledge and understanding of a reasonable employee. Gurley nowhere made express reference to these incidents in his speech, and no evidence was presented to the Board to show that the employees generally would have known of these specific incidents and understood that Gurley was referring to these specific incidents. Nor is there anything in the record to suggest that, even if a reasonable employee had known and understood that Gurley might have been referring to unprotected activity, the employee would have considered the no-harassment rule limited to such conduct.

Accordingly, we grant the Union's petition for review in

part and vacate the NLRB's determination as to the lawfulness of the no-harassment rule promulgated on June 6, 2000, and remand to the NLRB for further proceedings consistent with this decision.