07-5422-ag
*National Labor Relations Board v. Special Touch Home Care Services, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

August Term, 2008

(Argued: November 19, 2008                    Decided:  May 12, 2009)

Docket No. 07-5422-ag

————————————

NATIONAL LABOR RELATIONS BOARD,
*Petitioner*,

1199 SEIU UNITED HEALTHCARE WORKERS,
*Intervenor*,

—v.—

SPECIAL TOUCH HOME CARE SERVICES, INC.,
*Respondent*.

————————————

Before:

STRAUB, SACK, AND WESLEY, *Circuit Judges*.

————————————

Application for enforcement of an order of the National Labor Relations

Board finding that Respondent Special Touch Home Care Services, Inc., engaged

in unfair labor practices by (1) not immediately reinstating employees who went

on strike after the employees did not respond in the affirmative to the employer's

survey asking if they would go on strike and (2) unlawfully interrogating two

1

employees about their support for the union. The National Labor Relations Board therefore ordered Respondent to take various remedial actions.

First, we hold that, in connection with reinstatement, the Board erred by not considering the intersection of the plant rule doctrine and Section 8(g) of the National Labor Relations Act. We remand on this point so the NLRB can opine on this issue in the first instance. Second, we hold that the interrogations were unlawful, though not for the reasons relied upon by the Board.

Enforced in Part, Modified in Part and Enforced in Part as Modified, and Enforcement Denied in Part; Remanded.

_____

AMY H. GINN, Attorney (Jill A. Griffin, Supervisory Attorney; Ronald Meisburg, General Counsel; John E. Higgins, Jr., Deputy General Counsel; John H. Ferguson, Associate General Counsel; Linda Dreeben, Deputy Associate General Counsel; *on the brief*), National Labor Relations Board, Washington, DC, for *Petitioner*.

RICHARD J. REIBSTEIN, Wolf, Block, Schorr and Solis-Cohen LLP (Russell E. Adler, *on the brief*), New York, NY, *for Respondent*.

DAVID M. SLUTSKY, Levy Ranter, P.C., New York, NY, *for Intervenor*.

_____

STRAUB, *Circuit Judge*:

Petitioner National Labor Relations Board ("NLRB" or "Board") petitions this Court for enforcement of its final decision and order, *Special Touch Home Care Servs., Inc. & New York's Health & Human Serv. Union 1199/SEIU*, 351 N.L.R.B. No. 46, 2007 WL 2963267 (Sept. 29, 2007) ("*Special Touch II*"), finding that Respondent Special Touch Home Care Services, Inc. ("Special

Touch" or "Company") acted unlawfully by (1) not immediately reinstating employees who went on strike after failing to respond affirmatively to a survey asking if they would strike, and (2) interrogating employees about their support for the union. Special Touch responds that (1) the employees' actions were not protected because they violated a neutral, non-discriminatory "plant rule" and because the employees' conduct was indefensible, and (2) the interrogations were not improper. The Board also found that one striker, Crecencia Miller, was lawfully discharged; no party disputes this finding.

With respect to the primary issues raised on appeal, we first hold that, in connection with the reinstatement of strikers, the Board erred by not considering the intersection of the plant rule doctrine and Section 8(g) of the National Labor Relations Act ("NLRA") as amended, 29 U.S.C. § 158(g). In remedying this error, as more fully explained *infra*, we ask that the Board opine on the relationship between these two rules in the first instance. Second, we hold that the interrogations were unlawful, though not for the reasons relied upon by the Board.

Accordingly, the order below is enforced in part (with respect to Miller) and modified in part and enforced in part as modified (with respect to interrogations). Enforcement is denied in part (with respect to reinstatement). The case is remanded in part (with respect to reinstatement) for proceedings consistent with this opinion.

## BACKGROUND

3

On May 27, 2004, 1199 SEIU United Healthcare Workers ("Union") served a ten-day strike notice on Special Touch, indicating that a strike would commence on June 7, 2004 and last for three days.[1] Typically, advance notice is not required before a strike. *See Montefiore Hosp. & Med. Ctr. v. NLRB*, 621 F.2d 510, 515 (2d Cir. 1980). However, in 1974, Congress amended the National Labor Relations Act to add Section 8(g). *See* Pub. L. No. 93-360, § 1(e), 88 Stat. 395, 396. Section 8(g) states in pertinent part:

> A labor organization before engaging in any strike, picketing, or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing and the Federal Mediation and Conciliation Service of that intention . . . . The notice shall state the date and time that such action will commence.

29 U.S.C. § 158(g). The parties assume that Special Touch is a "health care institution" within the meaning of Section 8(g). *See Special Touch Home Care Servs., Inc. & New York's Health & Human Serv. Union 1199/SEIU*, No. 29-CA-26661, 2005 WL 2323361, at n.3 (N.L.R.B. Div. of Judges, Sept. 15, 2005) ("*Special Touch I*") ("Although it is far from clear that the Respondent provides medical services, it seems that the parties herein, assumed that it is a health care facility within the meaning of the Act.").

Special Touch is a home health care agency located in Brooklyn, New York. It employs home health aides, who provide home health care services to clients at the clients' residences. Special Touch has a roster of about 2500

---

[1] The Union was not representing Special Touch's employees at the time. However, that point is immaterial here.

4

employees; of these 2500, over 1400 were assigned to clients on June 7, 2004.

Following the Union's notice, Special Touch surveyed its employees to determine who would not be working during the strike. Special Touch assigned a replacement if an aide said he would not be working during the week of June 7. A total of seventy-five aides told Special Touch they would not be working on June 7, and a replacement was assigned to the corresponding client for each for the time the employee was out. After the strike, the employees were generally reinstated without any adverse consequences. This case does not involve those seventy-five employees.

In addition to those seventy-five, forty-eight other aides did not report for work on June 7, 2004. These latter forty-eight did not respond to Special Touch's survey by indicating that they would miss work. They also did not "call in," i.e., provide at least two hours' notice that they were going to miss a shift, as they are generally required to do by company policy. (The call-in rule applies to all absences, not just strikes.) As a result, Special Touch had to find replacements for the forty-eight with little or no lead time; forty-three clients received only partial coverage on June 7 and five received no coverage at all. Many of the forty-eight returned to work the next day, i.e., they did not strike for the full three-day period.

On June 14, 2004, Special Touch sent a letter to the forty-eight employees who missed work on June 7 without providing notice. The employees were told that they had violated Special Touch's policy by not calling in before missing work. However, the letter indicated that the employees would not be discharged.

5

Eventually, some of the forty-eight were reassigned to their original positions, some were reassigned to positions that were different (either substantively or in terms of the number of hours), and some found work elsewhere.[2]

Later, in July 2004, while the Union's petition to represent the home health aides was pending, a coordinator at Special Touch named Lydia called an aide, Miriam Perez, and asked various questions about the Union, including if Perez had signed a union card. A month later, a Special Touch coordinator named Carmen Vasquez called an aide, Soila Peguero, and asked if Peguero had received an election package from the Union; Vasquez told Peguero to let her know when the package arrived so Vasquez could help her vote. Vasquez also said that Peguero should vote no if she were unable to contact Vasquez when the voting materials arrived.

On January 28, 2005, the NLRB filed a complaint against Special Touch, and on September 15, 2005, the ALJ found for the Board on essentially all counts. *See generally Special Touch I*, No. 29-CA-26661, 2005 WL 2323361. On September 29, 2007, the NLRB affirmed the decision of the ALJ in all material respects relevant to this appeal.[3] *See Special Touch II*, 351 N.L.R.B. No. 46. Specifically, the Board found that Special Touch violated the law by failing to

---

[2] The Board found that one striker, Crecencia Miller, was lawfully discharged, *see Special Touch Home Care Servs., Inc. & New York's Health & Human Serv. Union 1199/SEIU*, 351 N.L.R.B. No. 46, 2007 WL 2963267, at *2-4, (Sept. 29, 2007) ("*Special Touch II*") and the propriety of her discharge is not disputed on this appeal.

[3] The Board reversed with respect to Miller: the ALJ had found that her discharge violated the NLRA, but the Board found that she was lawfully terminated.

6

immediately reinstate the strikers who did not call in and by interrogating employees about the Union. *Special Touch II*, 351 N.L.R.B. No. 46, 2007 WL 2963267, at *1 n.3. The NLRB did not discuss the plant rule or indefensible conduct arguments raised by Special Touch, but it did adopt the ALJ's decision, *see id.* at *7-22 (decision of ALJ) which discussed those issues, *see id.* at *12 (plant rule), *13 (indefensible conduct).[4] The Board also issued a remedial order requiring the Company to take various steps. These included reinstating workers who had not yet returned to work or who had their terms of employment changed since the strike, and making whole strikers who offered to return to work. *Id.* at *5-6.

**DISCUSSION**

**I.  Standard of Review**

As we have explained recently,

> our review of the Board's decision is highly deferential. Specifically, we review the NLRB's factual findings to determine whether they are supported by substantial evidence in light of the record as a whole, and we review the Board's legal conclusions to ensure that they have a reasonable basis in law. Furthermore, we defer to the Board's decision when there appears to be more than one reasonable resolution and the Board has adopted one of these.

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. NLRB*, 520 F.3d 192, 196 (2d Cir. 2008) (citations and internal quotation marks

---

[4] The NLRB only tangentially alluded to Special Touch's other defenses, that the strikers were replaced by permanent employees, *see Special Touch II*, 351 N.L.R.B. No. 46, 2007 WL 2963267, at *4, *5 n.15, and that the failure to reinstate was supported by a legitimate business justification, *see id.* at *4.

omitted).  In the immigration context, when the Board of Immigration Appeals adopts and affirms the Immigration Judge's opinion and supplements it with its own conclusions, we review both opinions.  *See, e.g.*, *Matadin v. Mukasey*, 546 F.3d 85, 89 (2d Cir. 2008).  We have not squarely held the same in the labor context, but such a rule is consistent with that of other circuits.  For example, the Third Circuit has written, "Where the [NLRB] adopts the ALJ's findings of fact and conclusions of law, it is the ALJ's determinations that we review. . . . Where the Board has adopted the ALJ's decision in part, the Court reviews both." *Trafford Distrib. Ctr. v. NLRB*, 478 F.3d 172, 179 (3d Cir.), *cert. denied*, 128 S. Ct. 110 (2007).  Here, the NLRB "affirm[ed] the [administrative law] judge's rulings, findings, and conclusions, as modified and set forth in full" in the Board's opinion.  *Special Touch Home Care Servs., Inc. & New York's Health & Hum. Serv. Union 1199/SEIU*, 351 N.L.R.B. No. 46, 2007 WL 2963267, at *1 n.2 (Sept. 29, 2007) ("*Special Touch II*").  Therefore, we will review both the ALJ's opinion and the Board's.

## II.     Analysis

### A.     Crecencia Miller

The NLRB found that Crecencia Miller was lawfully discharged.  *See Special Touch II*, 351 N.L.R.B. No. 46, 2007 WL 2963267, at *4.  The parties do not dispute this.  We grant the petition for enforcement with respect to the Board's finding that Miller was properly discharged.

### B.     Failure to Immediately Reinstate Workers

8

Forty-eight employees struck without either calling in or responding honestly to Special Touch's survey. When they returned to work, they were not all immediately reinstated to their prior positions, which the NLRB held was unlawful. *See Special Touch II*, 351 N.L.R.B.. No. 46, 2007 WL 2963267, at *1. Special Touch argues on appeal, *inter alia*, that the employees lost the protections of the law by failing to call in before missing their shifts.

Thus, the first disputed issue in this case is whether employees of a health care institution who violate a non-discriminatory call-in rule lose the protections of the NLRA even though the relevant union has given the notice required by Section 8(g) thereof. This is a question of first impression in this Circuit. Because we are of the opinion that the NLRB should address this issue as an initial matter, we deny the petition for enforcement in principal part and remand the case for further proceedings. Both Special Touch and the NLRB insisted at argument that Section 8(g) and the plant rule doctrine do not overlap. However, as we discuss below, this case is a manifestation of that intersection.

The plant rule doctrine permits an employer to enforce neutral "reasonable rules covering the conduct of employees on company time." *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 803 n.10 (1945) (internal quotation marks omitted). The Board expounded on the plant rule doctrine in *Terry Poultry Co.*, 109 N.L.R.B. 1097 (1954). In that case, two employees walked off a production line to convey a grievance to management regarding working conditions. *Id.* at 1098. The NLRB held that this was not protected conduct because the employees failed

9

to follow a rule adopted by the company,

> well known to its employees, requiring them to notify their foreman or fellow employees when they desired to leave the production line. Plainly, such a rule is necessary to insure orderly and efficient operation of the production line. It is not, nor could it be, contended, that this rule was adopted for a discriminatory purpose. . . . [T]he Respondent's rule was not designed to limit an employees' union or concerted activity but simply to control absences from the production line. . . . In these circumstances, and considering the legitimate business interests of the Respondent and the statutory rights of its employees, we find that the Respondent's rule is not an unreasonable impediment to the employees' right to engage in concerted activities . . . .

*Id.*

Similarly, other cases recognize the right of an employer to enforce non-discriminatory rules. *See, e.g.*, *La Mousse, Inc.*, 259 N.L.R.B. 37, 49-50 (1981), *enforced*, 703 F.2d 576 (9th Cir. 1983); *Gen. Chem. Corp.*, 290 N.L.R.B. 76, 83 (1988); *Wilshire at Lakewood & Lisa Jochims*, 343 N.L.R.B. 141, 144 (2004), *rev'd on other grounds*, *Jochims v. NLRB*, 480 F.3d 1161 (D.C. Cir. 2007). Thus, on its face, this case would seem to be governed by the plant rule doctrine: Special Touch had a neutral plant rule in effect requiring employees to call in before missing a shift; those who struck without notifying Special Touch violated that rule; and it can be posited that the Company therefore did not engage in unfair labor practices by failing to immediately reinstate them.

However, the plant rule cases emphasize factors that are not present in this case, making them slightly inapposite. For example, *Republic Aviation* discusses plant rules in the context of "employees *on company time*," 324 U.S. at 803 n.10

10

(emphasis added and internal quotation marks omitted), and it is not clear whether these forty-eight employees were on company time when they failed to call in. Some rules the NLRB has upheld relate to the need to protect an employer's property, *see, e.g.*, *Terry Poultry*, 109 N.L.R.B. at 1098; *Gen. Chem. Corp.*, 290 N.L.R.B. at 83, whereas the primary risk of harm here was to Special Touch's *clients*. Special Touch cites *La Mousse*, in which the NLRB upheld a plant rule requiring workers to call in one hour in advance if they were going to miss their shift or be late, similar to the rule here. 259 N.L.R.B. at 49. However, the NLRB only reached the issue of whether the adoption of the rule was an unlawful unilateral change of the terms and conditions of employment, *see id.* at 49-50; the Board did not pass on the substantive validity of the rule itself. In any event, to the extent that the NLRB upheld the call-in rule in *La Mousse*, the workers did not miss work to strike or otherwise engage in protected activity, *id.*, and thus *La Mousse* is inapposite.

Furthermore, a plant rule requiring notice cannot be immediately reconciled with cases which have held that individual employees — including in the medical context — need not give notice before going on strike. For example, in *Montefiore Hospital*, we held that doctors who engaged in a sympathy strike did not render their conduct unprotected by failing to give notice:

> In this case, although prior notice by Drs. Gould and Fisher would have been more considerate and in keeping with their ethical duties . . . , we cannot say that their failure to give it created such danger or risk of harm to patients as to justify depriving them of the Act's protection. This was not a case in which patients were left lying on

11

the operating table, emergency room personnel walked off, or people in need of immediate treatment were left to fend for themselves.

*Montefiore Hosp. & Med. Ctr.*, 621 F.2d 510, 516 (2d Cir. 1980).  Thus, we rejected the argument that Section 8(g) requires individual employees to give notice beyond what is required by statute.  We said such an interpretation would require us to "disregard the ordinary meaning of plain language," *id.* at 514 (citation and internal quotation marks omitted), and "would in effect be rewriting [§] 8(g)," *id.* at 516.  29 U.S.C. § 158(g), by its own terms and as we emphasized in *Montefiore Hospital*, applies only to labor organizations and not to individual employees.

Certain plant rule cases come to a similar conclusion, namely, that no individual notice is required.  *See, e.g.*, *NLRB v. Wash. Aluminum*, 370 U.S. 9, 16 (1962) ("Nor can we accept the company's contention that because it admittedly had an established plant rule which forbade employees to leave their work without permission of the foreman, there was justifiable 'cause' for discharging these employees . . . ."); *NLRB v. Pratt & Whitney*, 789 F.2d 121, 131 (2d Cir. 1986) (requiring employees to call in every day of a strike and give a reason for absence is an unfair labor practice).

However, both *Washington Aluminum* and *Pratt & Whitney* are distinguishable, as the plant rule in the former required workers to receive permission of the foreman to leave work, and the rule in the latter required workers to call in and indicate the reason why they were missing work, e.g., to

12

strike.  Moreover, in *Montefiore Hospital*, we noted in a dictum:

> When, as in this case, a union has given notice of its intention to strike, the hospital would be well-advised to inquire of the rest of its employees whether they plan to stay out in sympathy. An employee who strikes after promising to show up may well forfeit protection under the Act.

621 F.2d at 515.

Here, Special Touch conducted such a survey.  Possibly relying on the dictum from *Montefiore Hospital*, it believed those who struck without responding honestly to the survey would not be protected.  In this case, over 1300 employees did not say they would miss work during the week of June 7, 2004, and did not call in before their shift.  If Special Touch could not rely on the survey or the neutral call-in rule, the Company (not to mention its clients, many with serious needs) could be in a state of limbo, with somewhere between zero and 1300 aides *potentially* going on strike.  Special Touch's conclusion that those who did not either respond affirmatively to the survey or call in would lose the NLRA's protections is thus arguably reasonable.

However, it seems equally reasonable for the Union to instruct employees (correctly) that they need not give individualized notice to the Company because the Union had already given the notice required by Section 8(g).  As discussed above, we have held that Section 8(g) places a burden only on labor organizations, not individual employees.

Therefore, it appears both parties reasonably relied on separate doctrines — the Union relying on Section 8(g) and Special Touch on the plant rule doctrine

13

— and these rules came into conflict with each other. No other case, either at the NLRB or in the federal courts, involves the intersection of both doctrines. *Montefiore Hospital*, for example, was only a Section 8(g) case, while *Terry Poultry* and *General Chemical* only involved plant rules. Thus, even if the plant rule and notice cases were directly on point (and they are not, as described *supra*), it remains that they do not speak to the implications, if any, of Section 8(g). This case illustrates the intersection between the two, and it is proper for us to remand to the NLRB to address this intersection in the first instance. *Cf. Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 900 n.10, 905-06 (1984) (explaining that when a court of appeals determines that the NLRB erred in adopting a remedy, the proper course is to remand); *NLRB v. Quinnipiac College*, 256 F.3d 68, 81 (2d Cir. 2001) (remanding to NLRB for determination of proper remedy in the first instance); *Ewing v. NLRB*, 732 F.2d 1117, 1122 (2d Cir. 1984) (remanding when the relevant legal issues were not properly developed at the Board level).

Thus, on remand, the NLRB should determine where the law stands in light of the intersection between Section 8(g) and the plant rule, i.e., whether Special Touch may enforce its call-in rule and mandate compliance with its survey, reasonably relying on the results of both, in light of Section 8(g)'s requirement that only unions and not individual employees are required to give notice to health care employers.

This is not to say that the case law provides no guidance. First, as noted in *Republic Aviation*, employees' "rights are not unlimited in the sense that they can

14

be exercised without regard to any duty which the existence of rights in others may place upon employer or employee. Opportunity to organize and proper discipline are both essential elements in a balanced society." 324 U.S. at 798. This signals that there is some weighing of interests involved when it comes to the NLRB's application of the relevant doctrines.

Second, *Montefiore Hospital* implicitly exemplifies this kind of balancing. This was a Section 8(g) case in which we held that employees, even in the health care context, are not required to give individual notice in the event of a strike. Yet we intimated (but did not hold) that notice might be required if "failure to give [notice] created such danger or risk of harm to patients as to justify depriving them of the Act's protection." 621 F.2d at 516. This suggests that Section 8(g) may not be the end of the inquiry; even if the Union gave the required 8(g) notice, and even though there is no general requirement that employees give individualized notice, a high "risk of harm to patients" might nonetheless "depriv[e employees] of the Act's protection."

Thus, on remand, the NLRB should consider the several interests that must be balanced in resolving this issue. Although the case law does not answer the precise question posed, it highlights certain themes that should guide the NLRB. These include (1) the employer's attempt to maintain a properly regulated workforce, (2) the employees' interest in striking (including their interest in not having to decide in advance that they wished to participate), and (3) the risk to the clients, including the nature of the care provided by the aides. For example, if

15

Special Touch's aides were administering medication to treat a life-threatening illness, their actions could be analogous to leaving patients "lying on the operating table," *Montefiore Hosp.*, 621 F.2d at 516, which we have suggested might be unprotected activity. Conversely, if the aides were monitoring clients who had no serious medical needs and were in no danger, their actions might retain the NLRA's protections.

Ultimately, the NLRB need not provide a broad analysis of the modern state of the plant rule doctrine or even the factors a court should consider in applying the doctrine. Instead, it need only decide the degree to which the plant rule doctrine is affected by Section 8(g) and whether, in this case, after Special Touch was informed of the strike by the Union, Special Touch's employees are still entitled to labor law protection given their failure to comply with the call-in rule or honestly answer Special Touch's survey. In particular, the NLRB should explore, in light of *Montefiore Hospital*, how the limited scope of Section 8(g) should apply in a case where the relevant labor organization may have instructed employees that they need not inform the employer of their absence.

The ALJ did discuss these issues in his opinion, albeit briefly. *See Special Touch II*, 351 N.L.R.B. No. 46, 2007 WL 2963267, at *12 (plant rule), *12-13 (Section 8(g)). However, that analysis was lacking to the extent that it did not recognize the intersection of the plant rule and Section 8(g). Because our review of the NLRB's analysis is "highly deferential," and we defer to the Board's legal conclusions so long as they have a reasonable basis in law, even if we might

16

decide otherwise ourselves, the Board should address the issue in the first instance. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. NLRB*, 520 F.3d 192, 196 (2d Cir. 2008). As the Supreme Court has written in another context, "The Congress has committed to the [NLRB] the task of striking the appropriate balance among the interests of hospital employees, patients, and employers, a role familiar to the Board in other contexts." *NLRB v. Baptist Hosp., Inc.*, 442 U.S. 773, 779 (1979). The Board should "strik[e] the appropriate balance" here.

Because we find that the Board did not adequately analyze the intersection of the plant rule doctrine and Section 8(g), we do not reach Special Touch's indefensible conduct, permanent replacement, and legitimate business justification defenses.

### B. Interrogations

The NLRB contends that, in August 2004 (in an incident unrelated to the June 2004 strike), two Special Touch employees unlawfully interrogated aides regarding their support for the Union. Threats or coercive interrogations of employees regarding their union activities constitute unfair labor practices in violation of Section 8(a)(1). *See* 29 U.S.C. § 158(a)(1); *see also NLRB v. J. Coty Messenger Serv., Inc.*, 763 F.2d 92, 97 (2d Cir. 1985) (citing cases).

Special Touch does not argue that the questioning was not coercive; instead, it argues that the employees who interrogated aides about their support for the Union were not "supervisors" within the meaning of the NLRA and that

17

therefore the interrogations were not improper. The ALJ found these to be improper coercive interrogations, mistakenly believing that Special Touch had stipulated to the fact that all of its so-called "coordinators" were supervisors within the meaning of 29 U.S.C. § 152(11). *See Special Touch II*, 351 N.L.R.B. No. 46, 2007 WL 2963267, at *1 n.3 (referencing *Special Touch Home Care Servs., Inc. & New York's Health & Human Serv. Union 1199/SEIU*, No. 29-CA-26661, 2005 WL 2323361, at n.2 (N.L.R.B. Div. of Judges, Sept. 15, 2005)). The Board attempted to clarify this error and held that only two employees were stipulated supervisors. *See Special Touch II*, 351 N.L.R.B. No. 46, 2007 WL 2963267, at *1 n.3. Special Touch claims that it stipulated only that the workers' job title was coordinator, not that they were *supervisors* within the meaning of the NLRA.

However, Section 8(a)(1)'s prohibition on unfair labor practices does not apply only to practices that are carried out by supervisors. Section 8(a)(1) simply states that it is "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of rights guaranteed by" the NLRA. 29 U.S.C. § 158(a)(1). "The term 'employer' includes any person acting as an agent of an employer, directly or indirectly . . . ." *Id.* § 152(2). The Board has explained that the relevant question in determining whether one is an agent is "whether, under all the circumstances, the employees would reasonably believe that the [interrogating] employee in question was reflecting company policy and speaking and acting for management." *Waterbed World*, 286 N.L.R.B. 425, 426-

18

27 (1987) (internal quotation marks omitted). We have found a violation of Section 8(a)(1) even when the interrogating individual was not a supervisor under the terms of the Act. *See Abbey's Transp. Servs., Inc. v. N.L.R.B.*, 837 F.2d 575, 578-79 (2d Cir. 1988) (finding violation when interrogator was a "lawyer-consultant").

Here, the interrogators were clearly Special Touch's agents, making the interrogations unlawful. Special Touch's home health aides report to "coordinators." These coordinators assign aides to clients and set the aides' schedules in a manner consistent with the clients' plans of care. *See Special Touch II*, 351 N.L.R.B. No. 46, 2007 WL 2963267, at *1. In Crecencia Miller's case, it was the coordinator who, when Miller showed up late to a shift, asked her to leave the client's home. *See id.* at *2-3. Coordinators are also responsible, *inter alia*, for ensuring that aides have the skills and training necessary to meet clients' needs.

The ALJ found that two employees were questioned about their contacts with the union. Miriam Perez testified that,

> [i]n the middle of July, [a coordinator named] Lydia called me to ask me if I had signed a union card. How did I find out about the union? How had I signed? By mail? By phone? Who had talked to me about the union[?] . . . She [asked] what the union offered me. . . . I told her . . . [t]he union is offering us what we need, what we want. Health insurance and paid vacation.

J.A. 155.

Another employee, Soila Peguero, testified that a coordinator named

19

Carmen Vasquez called in August of 2004.  Vasquez asked

> [i]f I received a package about the election.  I told her, no.  She
> said, when you receive the package, let me know, so I can help you
> vote.  If you get the package and you don't call me, mark it where
> it says no.  I did know of a co-worker who has received the
> package, that showed them how to vote.

*Id.* at 167.

As noted above, both the ALJ and the Board proceeded on the basis of a purported stipulation by Special Touch that these coordinators were supervisors within the meaning of the NLRA.  We need not address this question, because the record makes it clear that they were Special Touch's agents within the meaning of the Act and that "under all the circumstances, [Perez and Peguero] would reasonably [have] believe[d] that the [coordinators] in question w[ere] reflecting company policy and speaking and acting for management." *Waterbed World*, 286 N.L.R.B. at 426-27 (internal quotation marks omitted).

We therefore hold that the interrogations were unlawful.  In doing so, we do not rely on any stipulations, as the ALJ and Board apparently did.  We have the authority, however, to modify the Board's order and enforce it as modified. *See* 29 U.S.C. § 160(e).  Therefore, we modify the Board's opinion to hold the interrogations unlawful because Lydia and Vasquez were agents of Special Touch, bringing them within the definition of "employer" under § 152(2).  We enforce the order as modified.

**CONCLUSION**

In primary part, this case involves the intersection of the plant rule

doctrine and Section 8(g) of the National Labor Relations Act. Because we defer to the NLRB's interpretation of the law in this area, and because the Board has not spoken to this issue previously, we decline to do so in the first instance and remand on this point. However, no party disputes that the discharge of Crecencia Miller was lawful, so we enforce the Board's opinion to that extent. We hold that the interrogations by Lydia and Vasquez were unlawful, but for different reasons than those stated by the ALJ or Board; therefore, we modify the opinion and enforce it as modified.

Accordingly, the NLRB's order is ENFORCED in part (with respect to Miller), and MODIFIED in part and ENFORCED in part as modified (with respect to interrogations). Enforcement is DENIED in part (with respect to reinstatement). The case is REMANDED in part (with respect to reinstatement) for proceedings consistent with this opinion.