14-3978-ag
National Labor Relations Board v. Newspaper and Mail Delivers' Union of New York and Vicinity

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND  THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**


At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 22nd day of March, two thousand sixteen.

Present:     ROSEMARY S. POOLER,
             RICHARD C. WESLEY,
                     *Circuit Judges*.
             RICHARD K. EATON, [1]
                     *Judge*.

_____

NATIONAL LABOR RELATIONS BOARD,

                     *Petitioner*,

          v.                                                    14-3978-ag

NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY,

                     *Respondent*.

_____

Appearing for Petitioner:     Barbara A. Sheehy (Richard F. Griffin, Jr., Jill A. Griffin, Jennifer Abruzzo, John H. Ferguson, and Linda Dreeben, *on the brief*), National Labor Relations Board, Washington, D.C.

---

[1] The Honorable Judge Richard K. Eaton, of the United States Court of International Trade, sitting by designation.

Appearing for Respondent:     Daniel A. Silverman, Brooklyn, NY.

Application for Enforcement of an Order of the National Labor Relations Board.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the application of the National Labor Relations Board to enforce its order is **GRANTED.**

Petitioner National Labor Relations Board ("NLRB") seeks enforcement of its order requiring Respondent Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU") to, among other things, cease and desist from engaging in unfair labor practices in its dealings with the New York Post (the "Post"), the New York Times (the "Times"), and City and Suburban Delivery Systems, Inc., ("C&S"), a former wholly-owned subsidiary of the Times that is now defunct. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Our review of an NLRB order is "highly deferential." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. NLRB,* 520 F.3d 192, 196 (2d Cir. 2008). We "must enforce the Board's order where its legal conclusions are reasonably based, and its factual findings are supported by substantial evidence on the record as a whole." *NLRB v. Katz's Delicatessen of Houston St., Inc.*, 80 F.3d 755, 763 (2d Cir. 1996). Thus, we may not "displace the Board's choice between two fairly conflicting views, even [if we] would justifiably have made a different choice had the matter been before [us] *de novo.*" *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).

On application to this Court, NMDU did not contest the Board's finding that NMDU violated Section 8(b)(1)(A) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 158(b)(1)(A), by threatening to interfere with the employment of Daniel Altieri, a former employee of C&S. The Board found that NMDU expelled Altieri from the union because it alleged he was six months or more in arrears in union dues and warned Altieri that, as a result of his expulsion, he was at risk of losing employment with any employer governed by a collective-bargaining agreement with NMDU. The NLRB found this notice was improper because "the fact that he was in arrears at his former employer cannot, under Board law, be used to preclude his employment at another employer covered by a contract in a separate bargaining unit." Special App'x at 23. Because NMDU did not contest this conclusion, "[t]he Board is entitled to summary affirmance of portions of its order identifying or remedying" this violation. *NLRB v. Consol. Bus Transit, Inc.,* 577 F.3d 467, 474 n.2 (2d Cir. 2009).

Substantial evidence in the record as a whole also supports the Board's conclusion that NMDU violated Section 8(b)(1)(A) and (2) of the Act, 29 U.S.C. § 158(b)(1)(A) and (2), by causing or attempting to cause the Post, the Times, and C&S to discriminate against certain unit employees in violation of Section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), by giving priority hiring preference to nonunit individuals based on their union membership or prior employment with a union-signatory employer. It is well-established law that priority hiring preferences based on union membership violates Section 8(b)(1)(A) and (2) of the Act. *See, e.g.*, *Seafarers' Int'l Union*, 244 NLRB 641, 642 (1979). While "a bargaining representative for the employees of a

2

particular unit has the right to give an inferior seniority ranking to employees transferred from another unit," *Gen. Drivers & Helpers Local 229 (Associated Transt., Inc.)*, 185 NLRB 631, 631 (1970), a union may not cause or attempt to cause discrimination against an employee solely on the basis that the employee was not a member of the union or "had *not* been previously represented by the Union," *Interstate Bakeries Corp.*, 357 NLRB No. 4, at *5 (June 30, 2011), *enforced sub nom. NLRB v. Teamsters Local Union No. 523*, 488 F. App'x 280 (10th Cir. 2012).

The Board's decision in *Teamsters Local Union 896 ("Anheuser-Busch"),* 296 NLRB 1025 (1989), is not to the contrary. In that case, the employment preferences found permissible were "arguably skill based" and the preferences could not be secured "merely by joining the Union or by working for employers who have contracts with the Union." *Id.* at 1028. Additionally, among other things, "individuals claiming the [the hiring preference at issue] must also have worked a specific length of time to attain permanent employee status *and* thereafter have been laid off by a signatory employer." *Id.* By contrast, the contractual provisions at issue in this case are discriminatory on their face, unlawfully favoring individuals who were union members or who had worked for union-signatory employers for a longer period of time over non-union members or individuals who had not worked for a union-signatory employer.

NMDU argues that because the seniority list at issue was established more than six months prior to the filing of a charge, the complaints are time barred under Section 10(b) of the Act, 29 U.S.C. § 160(b). But the statute of limitations does not run from the date the seniority system was established; instead, it runs from the date that the charging employees were adversely affected by that system. *See Whiting Milk Corp.*, 145 NLRB 1035, 1037-38 (1964), *enforcement denied on other grounds,* 342 F.2d 8 (1st Cir. 1965). The issue is "not whether the [union] committed an unfair labor practice by inaugurating the policy, but whether it violated the law by continuing to maintain it; more specifically applying and giving effect to it in the lay-offs." *Potlatch Forests, Inc.*, 87 NLRB 1193, 1211 (1949), *enforcement denied on other grounds,* 189 F.2d 82 (9th Cir. 1951). Therefore, the charges at issue in this case are not barred by Section 10(b) of the Act.

Finally, substantial evidence in the record taken as a whole supports the Board's conclusion that the union breached its duty of fair representation by failing to provide notice to employees of their rights to not be full members of the union under *NLRB v. General Motors Corp.*, 373 U.S. 734 (1963), and failing to give notice that employees who are not full members do not have to pay the entire amount of dues that full members pay under *Communications Workers of America v. Beck*, 487 U.S. 735, 762-63 (1988). NMDU concedes that it did not provide any *General Motors* or *Beck* notices to Post employees in bulletins other than a 2003 bulletin that was posted at the facility, and in response to a subpoena by the NLRB's General Counsel, NMDU did not provide any evidence of any notices provided to C&S employees before those employees became bound by the contractual union-security provisions. Given this lack of evidence, the Board was entitled to draw an adverse inference that NMDU failed to properly inform Post and C&S employees of their rights under *General Motors* and *Beck. See Cal. Saw & Knife Works*, 320 NLRB 224, 231 (1995), *enforced sub nom. Int'l Ass'n of Machinists & Aerospace Workers v. NLRB*, 133 F.3d 1012 (7th Cir. 1998).

For the foregoing reasons, and finding no merit in NMDU's other arguments, we hereby **GRANT** the NLRB's application for enforcement of its order.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk