14-4692-ag(L)
*Atelier Condominium v. N.L.R.B.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28ᵗʰ day of June, two thousand sixteen.

PRESENT:   JOSÉ A. CABRANES,
                     SUSAN L. CARNEY,
                     CHRISTOPHER F. DRONEY,
                                *Circuit Judges.*

---

ATELIER CONDOMINIUM & COOPER SQUARE
REALTY, INC., AS JOINT EMPLOYERS,

  *Petitioners-Cross-Respondents*,

              v.                                        Nos.    14-4692-ag(L)
                                                                  15-95-ag(XAP)

NATIONAL LABOR RELATIONS BOARD,

  *Respondent-Cross-Petitioner.*

---

**FOR PETITIONERS:**            SCOTT M. WICH (Robert A. Sparer, *on the brief*), Clifton Budd & DeMaria, LLP, New York, NY.

**FOR RESPONDENT:**            JOEL A. HELLER (Kira Dellinger Vol, *on the brief*), *for* Richard F. Griffin, Jr., General Counsel, National Labor Relations Board, Washington, D.C.

Appeal from a November 26, 2014 order of the National Labor Relations Board.

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED** and the cross-petition for enforcement is **GRANTED**.

Petitioners-cross-respondents Atelier Condominium ("Atelier") and Cooper Square Realty, Inc. ("Cooper Square") (collectively "petitioners") appeal from a November 26, 2014 decision and order of the National Labor Relations Board (the "Board") finding that (1) Atelier coercively interrogated three of its employees—Sebastian Christopher ("Christopher"), Nazmir Alovic ("Alovic"), and Lulzim Alaj ("Alaj")—in violation of Section 8(a)(1) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 158(a)(1); (2) Atelier unlawfully discharged Christopher and Alovic for engaging in protected activity, in violation of Sections 8(a)(3) and (1) of the NLRA, 29 U.S.C. § 158(a)(3); and (3) that Atelier filed a baseless and retaliatory libel suit against Christopher, also in violation of Section 8(a)(1) of the NLRA. *See* SPA-1–6.

The Board also cross-petitions for enforcement of the remedies that its order imposed, including that respondents (1) cease and desist from taking certain enumerated actions prohibited by the NLRA; (2) offer Alovic and Christopher full reinstatement to their former jobs; (3) make Alovic and Christopher whole for any loss of earnings and other benefits suffered as a result of the discrimination against them; (3) compensate Alovic and Christopher for any tax consequences of receiving lump-sum backpay awards; (4) remove from Alovic's and Christopher's files any reference to their unlawful discharges; and (5) ensure that a motion is filed for leave to withdraw the allegations against Christopher in the libel suit, and compensate Christopher for any costs incurred in defense of those allegations. *See* SPA-6–7. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"[O]ur review of the Board's decision is highly deferential. Specifically, we review the [Board's] factual findings to determine whether they are supported by substantial evidence in light of the record as a whole, and we review the Board's legal conclusions to ensure that they have a reasonable basis in law." *N.L.R.B. v. Special Touch Home Care Servs., Inc.*, 566 F.3d 292, 296–97 (2d Cir. 2009) (internal quotation marks omitted). Accordingly, "[w]e may not displace the Board's choice between two fairly conflicting views, even though we would justifiably have made a different choice had the matter been before us de novo." *N.L.R.B. v. Consol. Bus Transit, Inc.*, 577 F.3d 467, 473 (2d Cir. 2009) (internal quotation marks omitted). As for the Board's selection of a remedy, our standard of review is abuse of discretion. *Local Union 36, Int'l Bhd. of Elec. Workers, AFL-CIO v. N.L.R.B.*, 706 F.3d 73, 91 (2d Cir. 2013).

Applying these standards, we deny the petition for review of the order and grant the cross-petition for enforcement, substantially for the reasons stated in the Board's thorough and well-reasoned November 26, 2014 decision, and the decision of the administrative law judge on which it

was in part based. *See* SPA-1–10. We write only to address one argument in petitioners' brief that warrants further discussion: their claim that the Board failed "to properly apply *Wright Line* to the record evidence," which "warrants a finding against enforcement of its order with respect to the discharges of Christopher and Alovic." Pet'rs' Br. 22.

Petitioners refer to the test set forth in *Wright Line, A Division of Wright Line, Inc.*, 251 N.L.R.B. 1083, 1083–88 (1980), *enforced*, 662 F.2d 899 (1st Cir. 1981). "Under the Board's two-step *Wright Line* test, . . . the Board's General Counsel must first present evidence that proves that protected conduct was a motivating factor in the discharge. If this burden of persuasion is met, the employer may avoid liability only if it demonstrates by a preponderance of the evidence that it would have reached the same decision absent the protected conduct." *N.L.R.B. v. G & T Terminal Packaging Co.*, 246 F.3d 103, 116 (2d Cir. 2001) (citations and internal quotation marks omitted).

Petitioners argue that "there existed *two* lawful motivations on the record supporting the discharges of Christopher and Alovic," either of which is "sufficient under *Wright Line* to defeat the General Counsel's case." Pet'rs' Br. 22 (emphasis in original). We consider each in turn.

The first such motivation is that "Alovic and Christopher involved themselves in a financial arrangement, they withdrew from that arrangement and [president of Atelier's board of managers Daniel] Neiditch and [property manager Sabrina] Mehmedovic would not continue the employment of people who would not assist in their real estate endeavors." *Id.* at 25–26. These "endeavors" consisted of an alleged scheme pursuant to which Neiditch and Mehmedovic "instructed doormen to prohibit real estate brokers other than Neiditch from entering the Atelier's lobby" and "Neiditch promised the concierge cash bonuses for steering potential buyers and renters to him." *Id.* at 22. In sum, petitioners' theory is that Christopher and Alovic were not discharged for engaging in protected activity—they were discharged for "their failure to further participate in" Neiditch and Mehmedovic's "plan . . . to capture the Atelier's sales and rental business." *Id.* at 26.

Petitioners' theory, however, suffers from several fatal flaws. As the Board points out, petitioners "vehemently deny the suggestion of [the] improper business practices" that they also cite as their motivation for Alovic's and Christopher's discharges. *Id.* at 27. In other words, petitioners contend that Alovic and Christopher were discharged for their refusal to participate in a scheme that petitioners insist does not exist. While petitioners technically may not be estopped from maintaining these inconsistent positions, the Board is correct that, "[b]ecause [petitioners] bear[ ] the burden of proving a motivation for [their] actions other than retaliation for protected activity, . . . [their] denial [of the scheme's existence] is critical." Resp't's Br. 32.

Also critical is petitioners' failure to introduce any evidence at the hearing—through witness testimony or otherwise—that Alovic and Christopher's refusal to participate in the scheme was, in fact, the reason they were discharged. As the Board correctly states, there was not even any evidence introduced that petitioners "knew at the time of [Alovic's and Christopher's] discharges that they

3

were no longer referring clients. Neither Alovic nor Christopher told Neiditch that they had stopped making referrals—indeed, Alovic told Neiditch that he was continuing to do so." *Id.* at 32–33 (citations omitted).

Petitioners' attempt to circumvent these deficiencies by arguing that, during her opening statement, the Board's counsel in effect "admitted" that Alovic and Christopher were discharged for refusing to participate in the scheme, Pet'rs' Br. 22–27, misses the mark. The Board's counsel did no such thing. Instead, she suggested only that an unwillingness to continue participating in the scheme was the reason why Alovic and Christopher "led the organizing drive for" representation by Service Employees International Union Local 32BJ. A-16; *see id.* ("They wanted clearly defined job duties that did not include enhancing Neiditch's real estate business."). This is a very different sort of "admission," and one that does not in any way undermine the Board's determination that petitioners' discharge of Alovic and Christopher was retaliatory.

Petitioners' argument that Christopher and Alovic engaged in other "conduct warranting their discharge for legitimate, non-discriminatory reasons," Pet'rs' Br. 28, also fails. With respect to Christopher, petitioners argue that he was discharged because he had previously been suspended and told "that he was not to return to work until Sunday, June 28, 2009," but he showed up at the Atelier "to perform[ ] a 'side job' for an Atelier tenant on the Saturday before." *Id.* In short, petitioners take the position that they discharged Christopher because he appeared at the Atelier before he was permitted to do so. The record, however, directly contradicts petitioners' position. Christopher was told only that he was to be "suspended without pay starting Wednesday, June 24, 2009 for 2 days and shall return to duty on Sunday June 28th 2009." A-405. Nothing about the foregoing language suggests that Christopher was not permitted to appear at the Atelier before that date but after his suspension had run, especially when his appearance was for the purpose of performing a "side job" that he seems to have been recommended for, and which seems to have been authorized by, Neiditch. *See* A-162; A-408–09. We therefore find petitioners' argument concerning Christopher to be unavailing.

Petitioners' argument with respect to Alovic fares no better. Petitioners argue that Alovic was discharged for "yelling and cursing at another employee in the Atelier's lobby." Pet'rs' Br. 31. But we agree with the Board that Atelier's disparate treatment of Alovic undermines its proffered reason for his discharge. *See* Resp't's Br. 25–26. Further, petitioners mischaracterize what they describe as "the story of Alovic's termination." Pet'rs' Br. 32. Alovic was not, as petitioners state, "found yelling and cursing at another employee in the Atelier's lobby," suspended, and "told that, the next time it happens, he would be fired," only to repeat his behavior, causing petitioners to make good on their promise. *Id.* at 31–34. Rather, Alovic's suspension was for leaving "his post and [going] on break without being rel[ie]ved properly," as the employee warning notice that petitioners issued to Alovic explicitly states. A-410. Consequently, we find petitioners' argument concerning Alovic to be unpersuasive as well.

For all of these reasons, we reject petitioners' argument that the alternative motivations for Christopher's and Alovic's discharges on which they rely were sufficient to defeat the General Counsel's case under *Wright Line*.

## CONCLUSION

We have considered all of the arguments raised by petitioners on appeal and find them to be without merit. For the reasons stated above, we **DENY** the petition for review and **GRANT** the cross-petition for enforcement.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk