11-1471-cv
Deep Woods Holdings, L.L.C. v. Savings Deposit Insurance Fund of the Republic of Turkey

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: May 23, 2012                            Decided: March 14, 2014)

Docket No. 11-1471-cv

_____

DEEP WOODS HOLDINGS, L.L.C.,

*Plaintiff-Counter-Defendant-Appellee,*

*-v.-*

SAVINGS DEPOSIT INSURANCE FUND OF THE REPUBLIC OF TURKEY,
TASARRUF MEVDUATI SIGORTA FUND,

*Defendant-Counter-Claimant-Appellant,*

EROL AKSOY,

*Intervenor-Defendant.*

_____

Before:

PARKER, HALL, and CARNEY, *Circuit Judges.*

_____

In this breach of contract action Defendant-Counter-Claimant-Appellant Savings Deposit Insurance Fund of the Republic of Turkey ("SDIF") appeals from the judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *J.*) granting summary judgment in favor of Plaintiff-Counter-Defendant-Appellee Deep Woods Holdings, L.L.C. ("Deep Woods") against SDIF on the issue of

liability and, following a bench trial, awarding Deep Woods $25.3 million in damages. The main issue on appeal is whether Deep Woods, through its predecessor-in-interest David Lichtenstein ("Lichtenstein"), timely exercised a call option within 45 days of the delivery by SDIF of the shares subject to the call option in accordance with a Stipulation entered into by the parties. SDIF argues that Deep Woods's breach of contract and constructive trust claims are barred because Deep Woods's exercise of the call option was untimely. We agree. In so doing we reject Deep Woods's argument that SDIF failed properly to preserve this issue below. We REVERSE the judgment of the district court and REMAND with instructions to grant summary judgment in favor of SDIF.

REVERSED AND REMANDED.

_____

GRANT HANESSIAN (John Albert Basinger, *on the brief*), Baker & McKenzie LLP, New York, NY, *for Defendant-Counter-Claimant-Appellant Savings Deposit Insurance Fund of the Republic of Turkey.*

JAMES S. O'BRIEN, JR. (Ross M. Bagley and Benjamin S. Akley, *on the brief*), Pryor Cashman LLP, New York, NY, *for Plaintiff-Counter-Defendant-Appellee Deep Woods Holdings, L.L.C.*

_____

HALL, *Circuit Judge*:

In this breach of contract action Defendant-Counter-Claimant-Appellant Savings Deposit Insurance Fund of the Republic of Turkey ("SDIF") appeals from the judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *J.*) granting summary judgment in favor of Plaintiff-Counter-Defendant-Appellee Deep Woods Holdings, L.L.C. ("Deep Woods") against SDIF on the issue of liability and, following a bench trial, awarding Deep Woods $25.3 million in damages. The

2

main issue on appeal is whether Deep Woods, through its predecessor-in-interest David Lichtenstein ("Lichtenstein"), timely exercised a call option within 45 days of the date by which SDIF was able to deliver the shares subject to the call option in accordance with a Stipulation entered into by the parties. SDIF argues that Deep Woods's breach of contract and constructive trust claims are barred because Deep Woods's exercise of the call option was untimely. We agree. In so doing we reject Deep Woods's argument that SDIF failed properly to preserve this issue below. For the reasons that follow, we REVERSE the judgment of the district court and REMAND with instructions to grant summary judgment in favor of SDIF.

## BACKGROUND

In 2003, banking regulators in the United States began investigating suspicious banking activities at Park Avenue Bank, N.A. ("Park Avenue Bank" or the "Bank"), a New York City-based bank controlled by Defendant-Intervenor Erol Aksoy ("Aksoy"). Aksoy, a Turkish national, has been the subject of numerous criminal investigations and prosecutions for fraudulent conduct related to banking in Turkey. In November 2003, regulators demanded that Park Avenue Bank remove Aksoy as its majority shareholder or risk liquidation. Park Avenue Bank found its white knight in Lichtenstein,[1] who desired to take a controlling interest in the Bank. That same month, Park Avenue Bank, Aksoy, and Lichtenstein entered into a Stock Purchase Agreement whereby Lichtenstein agreed to purchase $10 million worth of newly issued voting common stock from the Bank thereby acquiring a controlling interest in the Bank. The Stock Purchase Agreement, as amended,

---

[1] Plaintiff-Appellee Deep Woods is Lichtenstein's successor-in-interest.

3

required Aksoy to exchange all voting common shares owned by him in excess of 9.9% of the total outstanding shares for an equal amount of non-voting preferred stock. Aksoy would thus retain an ownership interest in the Bank while Lichtenstein took over the voting control.

To place additional limits on Aksoy's involvement in the Bank's management, the November 2003 Stock Purchase Agreement also required the Bank, its Directors, Aksoy, and Lichtenstein to enter into a separate Bank Control Agreement with the New York State Banking Department. This Agreement, entered into on January 23, 2004, obligated Aksoy to resign from the Bank's Board of Directors and deposit all of his common stock in a voting trust administered by an independent voting trustee approved by the state Banking Department. Additionally, the Bank Control Agreement contemplated a phase-out of Aksoy's relationship with Park Avenue Bank by requiring him to dispose of his entire equity interest in the Bank by January 23, 2009—five years after the execution of the Bank Control Agreement. If the control transfer from Aksoy to Lichtenstein, excepting Aksoy's disposal of his entire equity interest, did not occur by June 30, 2004, the scheduled closing date of the Stock Purchase Agreement, the Banking Department would liquidate the Bank's assets.

Approximately three weeks prior to the scheduled closing date, on June 7, 2004, SDIF, an agency of the Republic of Turkey with responsibilities similar to those of the U.S. Federal Deposit Insurance Corporation, brought an action in the New York Supreme Court for the County of New York seeking revocation and enforcement of a money judgment of approximately $9.8 million obtained against Aksoy in Turkey and seeking to prevent the Stock Purchase Agreement from closing. SDIF succeeded in securing a temporary

4

restraining order ("TRO") preventing Aksoy from making any sale, assignment, or transfer of any property in his possession. This TRO in turn restricted Aksoy from fulfilling his obligations under the Stock Purchase and Bank Control Agreements, which caused Park Avenue Bank to face the prospect of liquidation. For his part, Lichtenstein moved to vacate or modify the TRO as it pertained to him.

Perhaps recognizing that it stood to recover far less by attaching Aksoy's interest in Park Avenue Bank, were the Bank forced into liquidation, than the amount it could recover if the Bank were to receive a capital infusion from Lichtenstein and continue its operations, SDIF and Lichtenstein began negotiating the conditions for lifting the TRO and transferring control from Aksoy to Lichtenstein. On June 22, 2004, Lichtenstein and SDIF stipulated to the vacatur of the TRO against Park Avenue Bank and Lichtenstein "to the extent necessary to permit the parties to . . . complete the transactions contemplated in the [Stock Purchase and Bank Control Agreements] . . . other than delivery of stock certificates to Aksoy." J.A. at 51-52. As a direct result, Park Avenue Bank avoided liquidation, and Aksoy was permitted to retain 9.9% of the Bank's outstanding voting common shares, which would be placed in a voting trust pursuant to the Bank Control Agreement. Were the Bank to regain its financial footing following Lichtenstein's takeover, the value of Aksoy's interest in the Bank would increase correspondingly, and SDIF stood to recover an amount closer to the full amount of the judgment it sought to enforce. Additionally, the terms of the Stipulation mandated that Lichtenstein (1) cause the Bank to place into escrow all shares in the Bank issued or to be issued to Aksoy at the closing of the Stock Purchase Agreement, and (2) not oppose any effort by SDIF to attach the shares. SDIF also received the option to "put," or require

5

Lichtenstein to purchase, all of Aksoy's shares at a price to be calculated as the greater of $7 million or 70% of the shares' book value, as determined by an independent valuator. In return, Lichtenstein received the option to "call," or require SDIF to sell to Lichtenstein, Aksoy's shares at the same price. The Stipulation provided that the put option "may be exercised on 45 days['] notice to Lichtenstein" and that the call option "may be exercised within 45 days after [SDIF] is *able to deliver the shares* covered by the Call Option." J.A. at 56 (emphasis added).

The Stock Purchase Agreement closed as planned on June 30, 2004. Park Avenue Bank issued Lichtenstein 184,524 shares of non-voting preferred stock and 22,825 shares of common stock previously held by Aksoy, as well as an additional 11,434 common shares of stock owned by one of Aksoy's companies, all of which were promptly placed in escrow pursuant to the Stipulation. The New York Supreme Court granted SDIF's request for an order of attachment, and in December 2004, the Sheriff of New York City seized the escrowed shares formerly owned by Aksoy. Subsequently, on July 12, 2005, the state court entered judgment against Aksoy in the full amount of the judgment obtained in Turkey, plus interest, totaling $11,661,681.09.

With its state enforcement action all but resolved, it seemed that the only remaining obstacle to SDIF's recovery on the judgment was the exercise of either its put option or Lichtenstein's call option. On November 2, 2005, counsel for Lichtenstein exercised the call option through a letter forwarded to SDIF's counsel. SDIF, however, either failed or refused to remit the shares. Accordingly, on April 15, 2008, Deep Woods, the assignee of Lichtenstein's rights under the Stipulation, filed the amended complaint in this case,

6

asserting claims for breach of contract, constructive trust, and attorney's fees. Deep Woods alleged that Lichtenstein, acting through counsel, exercised his call option numerous times in late 2005 and early 2006 by email to SDIF's counsel but, in response, received only silence or an explanation that SDIF was not yet able to deliver the shares and that, therefore, the purported exercise of the call option was premature.

Following an order bifurcating issues of liability and damages at the summary judgment phase, both parties moved for summary judgment as to liability. On October 22, 2009, the district court granted summary judgment in favor of Deep Woods. Despite the bifurcated nature of the proceedings, the court also entered a judgment in the amount of $7 million, plus interest accruing from January 1, 2006, costs, and attorney's fees. SDIF moved for reconsideration, and the district court vacated the portion of its summary judgment order awarding damages, ordered that the judgment be revised accordingly, and directed the parties to proceed to discovery and trial on the issue of the shares' book value as of June 30, 2004, the closing date of the Stock Purchase Agreement.

Following discovery, the district court conducted a bench trial limited to damages, during which the court received testimony from two valuation experts and found that Deep Woods had proved damages in the amount of $16.2 million. The court entered judgment in an amount totaling approximately $25.3 million, which included interest accruing from December 17, 2005[2] and attorney's fees. SDIF now appeals the court's grant of summary judgment in favor of Deep Woods as to liability and the court's judgment following trial awarding $25.3 million to Deep Woods.

---

[2] The district court determined that Lichtenstein exercised his call option on November 2, 2005 and that SDIF breached its obligations under the call option, 45 days later, on December 17, 2005.

7

## DISCUSSION

We review *de novo* the district court's grant of summary judgment, drawing all factual inferences in favor of the party opposing summary judgment. *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 92 (2d Cir. 2013). Summary judgment is properly granted if, viewing the facts in the light most favorable to the non-moving party, there remains "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This Court has discretion to affirm a district's court grant of summary judgment on any ground appearing in the record. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010).

As to damages, determined by trial to the court in this case, "we review the court's findings of fact for clear error and its conclusions of law *de novo*." *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 890 (2d Cir. 2011) (internal quotation marks omitted). "A finding of fact is not clearly erroneous unless . . . [we are] left with the definite and firm conviction that a mistake has been committed." *Krieger v. Gold Bond Bldg. Prods.*, 863 F.2d 1091, 1098 (2d Cir. 1988) (internal quotation marks omitted).

## I

The main issue on appeal is whether Lichtenstein's exercise of his call option was timely. Under New York law, which the parties agree governs the interpretation of the Stipulation and the terms of the call option, time limits in options contracts are strictly construed. *See, e.g.*, *Boghosian v. SCS Props., Inc.*, 750 N.Y.S.2d 197, 199-200 (3d Dep't 2002). It is a "broadly accepted principle that time is of the essence" with respect to option contracts, even where the parties did not include language so indicating. *Urban Archaeology*

*Ltd. v. Dencorp Invs., Inc.*, 783 N.Y.S.2d 330, 335 (1st Dep't 2004). This principle is based at least in part on the fact that the optionor—here, Deep Woods—is protected only by the condition that the option must be exercised "strictly in accordance with its terms." *Id.* (citing 15 *Williston on Contracts* § 46.12 (4th ed. 1999)).

According to the Stipulation, Lichtenstein is permitted to exercise the call option "within 45 days after [SDIF] is able to deliver the shares" subject to the call option. At the summary judgment stage, the district court determined on the record that SDIF was "able to deliver the shares covered by the Call Option" on July 12, 2005. Later, at the conclusion of the trial on damages, the district court found as a fact that Lichtenstein exercised his call option on November 2, 2005, 113 days after SDIF was able to deliver the shares and, thus, well beyond the 45-day deadline. Based on the court's findings, Lichtenstein failed to exercise his call option within the timeframe established by the Stipulation.

We have no basis to disturb either of these findings. First, Deep Woods does not challenge on appeal the district court's finding that SDIF was able to deliver the shares on July 12, 2005. In the absence of any challenge to this finding, we decline to review it. *See United States v. Quiroz*, 22 F.3d 489, 490 (2d Cir. 1994) (noting the "well established" maxim that "an argument not raised on appeal is deemed abandoned" (internal quotation marks omitted)). Second, although Deep Woods argues that Lichtenstein timely exercised the call option almost immediately after the shares were attached on July 12, 2005, the district court determined that the call option was exercised on November 2, 2005—a finding subject to clear error review. Deep Woods has failed to establish that this finding of fact, made after a bench trial, was clearly erroneous. Indeed, beyond urging this Court to determine that the

call option was exercised much earlier than November 2, 2005, Deep Woods has made no arguments that this finding was erroneous. Absent any basis to determine that either of these factual findings creates a genuine dispute of material fact or is clearly erroneous, we are bound to accept them on appeal. We conclude, therefore, that Lichtenstein's exercise of the call option was untimely.

## II

Deep Woods contends, nevertheless, that even if Lichtenstein's exercise of the call option was untimely, SDIF waived this timeliness argument by failing to raise it before the district court. We disagree.

While we have repeatedly held that we will not consider an argument not raised before the district court, *see, e.g.*, *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 266 (2d Cir. 1997), SDIF did in fact preserve this issue by raising it in a letter brief in support of its motion for summary judgment. Specifically, SDIF argued that, assuming it "was 'able to deliver' the shares at the time it attached the shares or no later than when SDIF domesticated its judgment on July 12, 2005, Deep Woods was untimely in the purported exercise of the Call Option on November 2, 2005–a date that was 107 days after the later of the dates on which it claims SDIF became able to deliver the shares." Dist. Ct. Doc. No. 79, at 4 n.1 (internal citations omitted). While the assertion was first articulated in a footnote, SDIF also addressed the point in the body of its letter brief: "According to Deep Woods, SDIF was able to deliver the shares no later than July 12, 2005, but the purported exercise of the Call Option did not take place until November 2, 2005, more than 45 days later." Dist. Ct. Doc. No. 79, at 5. Based on those articulations, the issue of whether the call option was

10

timely was preserved before the district court and is now properly before us. *Cf. Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 644 n.3 (2d Cir. 2005) (finding that, although a case was not explicitly cited, argument in a reply brief supported by the particular case was sufficient to preserve the issue in the court below).

Deep Woods notes that SDIF admitted in its answer to the amended complaint that, "beginning in or about July 2005, [counsel for Lichtenstein] sent [counsel for Deep Woods] emails asserting Lichtenstein's purported rights under" the call option. Dist. Ct. Doc. No. 23, ¶ 41. This admission, Deep Woods maintains, prohibits SDIF from arguing on appeal that Lichtenstein did not exercise the call option until November 2, 2005 because an admission in an answer is binding on the defendant throughout the litigation. *See Nat'l Labor Relations Bd. v. Consol. Bus Transit, Inc.*, 577 F.3d 467, 474 (2d Cir. 2009). On its face, however, the allegation in the amended complaint that SDIF admitted is far from an unequivocal assertion that Lichtenstein timely exercised the call option. In fact, the statement does not provide a specific date on which the call option was exercised beyond simply "July 2005." As SDIF was not able to deliver the shares until nearly midway through that month, a purported exercise of the call option before July 12, 2005 would have been premature.

Moreover, the only e-mail in the record from July 2005 does not support Deep Woods's contention that Lichtenstein exercised his call option prior to November 2, 2005. This email by Lichtenstein's counsel to SDIF's counsel sent on July 5, 2005 (seven days before SDIF was able to deliver the shares) inquired about the status of certain shares covered by the call option. Specifically, it referred to shares held by Iktisat Leasing, a

11

Turkish company controlled by Aksoy.[3] It did not, however, refer—even obliquely—to the shares held by Aksoy himself. As the vast majority of the shares covered by the call option were held by Aksoy individually, and the shares held by Iktisat made up only a small portion of the total shares, that correspondence cannot be construed as an exercise of the call option. Additionally, the email itself cannot be read to constitute an exercise of the call option. Although it references the call option agreement, it is a request that SDIF consider selling some, but not all, of the shares covered by the call option at the option price.

We thus decline Deep Woods's invitation to read this email as an exercise of Lichtenstein's call option pursuant to the terms of the Stipulation. We further observe that even if it could be so construed, SDIF was not able to deliver the shares until a week later, on July 12, 2005, the date the attachment order was entered. Because the conditions of an option agreement are strictly construed, *see Urban Archaeology Ltd.*, 783 N.Y.S.2d at 335, the July 5, 2005 e-mail cannot constitute an exercise of Lichtenstein's call option.

Finally, whatever the weight of the admission in SDIF's answer to the amended complaint that Lichtenstein "asserted his rights" under the Stipulation "in or about July 2005," Deep Woods has not established that this admission is binding on this Court on appeal. Deep Woods did not raise this issue in the district court prior to the bench trial on

---

[3] The email reads as follows:

Grant-
  With regard to the 11,434 shares of common held by Iktisat Leasing, while these shares are covered by the Lichtenstein/SDIF put/call option agreement, would your client be willing to sell these shares to Lichtenstein today at the option price, rather than wait for the judicial determination on the balance of the shares held by Aksoy? I don't recall whether the Iktisat shares were part of the proceedings before Judge Lowe, but for purposes of this discussion I am assuming they are not. Correct me if I am wrong.

  Pinky

J.A. at 418.

damages. Following the trial, the district court determined that the call option was not exercised until November 2, 2005. In failing to assert before the district court at the summary judgment stage that SDIF's purported admission was binding on that court and permitting the issue of damages to proceed to trial, Deep Woods forfeited the right to argue that SDIF's admission should prevail over the district court's findings of fact made after trial. *Cf. Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 130 (2d Cir. 1999) (noting that, following a trial, a party generally may not appeal a prior denial of summary judgment because the verdict after a trial on the merits "supersedes . . . earlier summary judgment proceedings" (internal quotation marks omitted)). The court's finding that Lichtenstein exercised his call option on November 2, 2005 is subject to clear error review, and as noted above Deep Woods has advanced no argument that this finding is clearly erroneous.

We conclude, therefore, that Deep Woods failed to exercise its call option in a timely manner. We further find that SDIF properly preserved its argument that Lichtenstein failed to exercise timely his call option pursuant to the terms of the Stipulation. Having concluded that Deep Woods failed to comply with the terms governing its exercise of the call option, SDIF rather than Deep Woods is entitled to summary judgment.[4]

## CONCLUSION

The judgment of the district court is REVERSED, and the matter is REMANDED to the district court with instructions to enter summary judgment in favor of SDIF and to determine the attorney's fees, costs and disbursements to be awarded to SDIF.

---

[4] We note that the Stipulation provides that reasonable attorney's fees, costs, and disbursements incurred in litigation under the Stipulation shall be awarded to the prevailing party. Although SDIF filed a counterclaim for attorney's fees and costs in the district court, SDIF failed to request such an award in this appeal should it be successful. We therefore leave to the district court on remand the determination of any award of attorney's fees in connection with the pursuit of this appeal.

13