(December 6, 2016)

 Deep Woods Holdings LLC, Appellant, v Pryor Cashman LLP et al., Respondents. [43 NYS3d 27]—

Order, Supreme Court, New York County (Saliann Scarpulla, J.), entered on or about February 11, 2016, which granted defendants' motion to dismiss paragraphs 3-5 and 41-53 of the complaint pursuant to CPLR 3211, unanimously reversed, on the law, with costs, and the motion denied.

Defendant Pryor Cashman LLP represented nonparty David Lichtenstein in a transaction in which Lichtenstein was to purchase $10 million worth of stock in nonparty Park Avenue Bank. Before the transaction could close, nonparty Savings Deposit Insurance Fund of the Republic of Turkey (SDIF) sued the holder of 99% of the bank's shares and obtained a restraining order preventing any transfer of the shares (*Deep Woods Holdings, L.L.C. v Savings Deposit Ins. Fund of Republic of Turkey*, 745 F3d 619, 621 [2d Cir 2014], *cert denied* 574 US —, 135 S Ct 964 [2015]).

On June 22, 2004, Lichtenstein and SDIF entered into a stipulation, pursuant to which Lichtenstein had the right to exercise a call option to buy shares of stock in the bank for a specified sum, provided Lichtenstein exercised his right within 45 days after SDIF was able to deliver the shares. SDIF was able to deliver the shares on July 12, 2005, but Pryor Cashman did not exercise Lichtenstein's call option until November 2, 2005 (*Deep Woods*, 745 F3d at 623), and SDIF then refused to honor it.

Thereafter, Pryor Cashman recommended to Lichtenstein that he, together with nonparties Donald Glascoff, chairman of the bank, and Charles Antonucci, form plaintiff Deep Woods Holdings LLC, and that Lichtenstein assign the call option to Deep Woods, which would then sue SDIF to exercise the call option. In or about 2007, Pryor Cashman organized Deep Woods, drafted the assignment, and insisted on acting as counsel for Deep Woods in the litigation against SDIF. The assignment read in its entirety: "In consideration of the issuance to David Lichtenstein ('Assignor') of a 75% interest in Deep Woods Holdings LLC, a Delaware limited liability company ('Deep Woods'), as described in the Deep Woods Operating Agreement dated February 6, 2007, the Assignor hereby assigns, transfers and delivers to Deep Woods his entire right, title and interest in and to the option contained in Paragraph 8 of that certain Stipulation dated June 22, 2004 between the Assignor and [SDIF]." Pryor Cashman did not draft the assignment so as to specifically assign any tort claims Lichtenstein might have in connection with the exercise of the call option to Deep Woods.

According to Mr. Glascoff, when Pryor Cashman formed Deep Woods and prepared the assignment, it acted on behalf of Lichtenstein, the other members of Deep Woods, and Deep Woods itself. Mr. Glascoff further alleges that, during this process, Pryor Cashman was silent on the issue of whether the assignment transferred tort claims, but that it was Mr.

Glasscoff's understanding that it did, and, if he had understood that it did not, he would have insisted on adding any necessary language so that it did.

At the trial level, Deep Woods won $25.3 million in damages. However, the Second Circuit reversed, finding that the call option had not been not exercised in a timely manner (*Deep Woods*, 745 F3d at 620).

After the U.S. Supreme Court denied certiorari, Deep Woods brought the instant action against Pryor Cashman, alleging, inter alia, malpractice based on Pryor Cashman's failure to exercise the call option in a timely manner. On February 11, 2016, the motion court issued the order appealed from, granting Pryor Cashman's motion to dismiss so much of the malpractice claim as was based on the failure to timely exercise the call option. The motion court found that, because the assignment Pryor Cashman had drafted did not specifically assign Lichtenstein's tort claims, and because the malpractice alleged occurred while Lichtenstein owned the call option, Deep Woods did not have standing to sue Pryor Cashman. Deep Woods now appeals.

The motion court correctly found that the subject assignment, which merely transferred the assignor's "entire right, title and interest in and to the [call] option contained in Paragraph 8 of" another contract, did not explicitly assign tort claims (*see e.g. Commonwealth of Pennsylvania Pub. Sch. Employees' Retirement Sys. v Morgan Stanley & Co., Inc.*, 25 NY3d 543, 550-551 [2015]; *Dexia SA/NV v Morgan Stanley*, 135 AD3d 497 [1st Dept 2016]). Unlike the assignment in *Banque Arabe et Internationale D'Investissement v Maryland Natl. Bank* (57 F3d 146 [2d Cir 1995]), this assignment did not, by its terms, transfer rights to a *transaction*. The assignment is not ambiguous; even if it were (and if we therefore considered parol evidence), an unexpressed understanding does not suffice (*see Commonwealth of Pennsylvania*, 25 NY3d at 551).

However, accepting plaintiff's affidavit in opposition to defendants' motion as true, we find that plaintiff sufficiently pleaded that defendants should be equitably estopped from arguing that the assignment did not assign tort claims. Contrary to defendants' contention, estoppel can be based on silence as well as conduct (*see e.g. Rothschild v Title Guar. & Trust Co.*, 204 NY 458, 462 [1912]). Under these circumstances, where defendants drafted the assignment at a time when it represented both Lichtenstein and plaintiff, and that interpreting the assignment to exclude tort claims would mean that

neither the assignor nor plaintiff, the assignee, would be able to sue defendants for malpractice for failing to exercise the call option in a timely manner, we find that the "special circumstances" exception to the privity requirement applies (*see generally Estate of Schneider v Finmann*, 15 NY3d 306, 308-309 [2010]; *Good Old Days Tavern v Zwirn*, 259 AD2d 300 [1st Dept 1999]). To do otherwise might insulate defendants from liability for their alleged wrongdoing. Concur—Mazzarelli, J.P., Acosta, Saxe, Moskowitz and Gesmer, JJ.